# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | |
|---|---|
| NATHANIEL DEXTER MANNING, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. _____ ) |
| COCKE COUNTY, Tennessee, a governmental entity; ARMANDO FONTES, Sheriff of Cocke County, Tennessee, individually; JOSH HARTSELL, individually; STEPHEN REVILL, individually; KATRINA CALDWELL, individually; and JESSICA HUFF, individually; | ) Jury of Twelve Demanded ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

---

## CLASS ACTION COMPLAINT

---

Lance K. Baker
Tenn. Bar #: 032945
**THE BAKER LAW FIRM**
550 Main Street, Suite 600
Knoxville, TN 37902
Tel: 865-200-4117
lance@lbakerlawfirm.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

I.   NATURE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.   Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     B.   Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     A.   Snapshot of the Cocke County Jail . . . . . . . . . . . . . . . . . . . . . . . . . 11

     B.   Dexter Manning Is Booked Into the Jail Annex . . . . . . . . . . . . . . . . 12

     C.   Failures to Classify and Segregate Violent From Non-Violent
          Inmates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     D.   Plaintiff Is Brutally Assaulted By Inmates, As Corrections Officers
          Are Absent and In a Separate Facility . . . . . . . . . . . . . . . . . . . . . . . 15

     E.   Plaintiff Is Hospitalized for Severe Facial Trauma, Multiple Facial
          Fractures, and Surgical Repair of Those Fractures . . . . . . . . . . . . . . 16

     F.   Criminal Charges for Only One of Plaintiff's Assailants . . . . . . . . . . 18

     G.   Unsafe Jail Conditions: Antiquated Facilities, Overcrowding,
          Under-staffing, and Unqualified Officers . . . . . . . . . . . . . . . . . . . . . . 18

     H.   Failed Inspections and Decertification of the Jail. . . . . . . . . . . . . . . 22

     I.   Correction Officer Corruption, Civil Rights Cases, Inmate-on-
          Inmate Assaults . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

     J.   Real World Consequences . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

     K.   Circumstances Require Discovery to Permit Plaintiff to More
          Precisely Allege His Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

V.   WAIVER OF IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

VI.  CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

VII.  CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

      COUNT I – FAILURE TO PROTECT PLAINTIFF AND
OTHER INMATES; VIOLATION OF CIVIL RIGHTS LAWS
UNDER COLOR OF LAW, 42 U.S.C. § § 1983 and 1988
(Against Sheriff Fontes and Administrator Hartsell) . . . . . . . . . . . .  31

      COUNT TWO – FAILURE TO PROTECT PLAINTIFF AND
OTHER INMATES; VIOLATION OF CIVIL RIGHTS LAWS
UNDER COLOR OF LAW, 42 U.S.C. § § 1983 and 1988
(Against Officer Revill) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

      COUNT THREE – FAILURE TO PROTECT PLAINTIFF
AND OTHER INMATES; VIOLATION OF CIVIL RIGHTS
LAWS UNDER COLOR OF LAW, 42 U.S.C. § § 1983 and
1988 (Against Officers Revill, Caldwell, Huff) . . . . . . . . . . . . . . . . .  38

      COUNT FOUR – MUNICIPAL LIABILITY – POLICY,
CUSTOM, AND PRACTICE OF FAILING TO PROTECT
INMATES BASED UPON UNSAFE CONDITIONS OF
CONFINEMENT; VIOLATION OF CIVIL RIGHTS LAWS
UNDER COLOR OF LAW, 42 U.S.C. § § 1983 and 1988
(Against Cocke County) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

      COUNT FIVE – FAILURE TO TRAIN AND SUPERVISE;
VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW,
42 U.S.C. §§ 1983 and 1988 (Against Cocke County, Sheriff
Fontes, and Administrator Hartsell) . . . . . . . . . . . . . . . . . . . . . . . . . .  46

      COUNT SIX – NEGLIGENCE (Against County, Sheriff
Fontes, Hartsell, and Officers Revill, Caldwell, and Huff) . . . . . . . . .  50

      COUNT SEVEN – INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS (Against All Individual
Defendants) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  54

VIII.  JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  55

IX.  PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  55

-iii-

**COMES** NATHANIEL DEXTER MANNING ("Plaintiff"), on behalf of himself and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23, and files this Complaint against the Defendants: COCKE COUNTY, Tennessee, ARMANDO FONTES, Sheriff of Cocke County, Tennessee, individually; JOSH HARTSELL, individually; STEPHEN REVILL, individually; KATRINA CALDWELL, individually; and JESSICA HUFF, individually (collectively, "Defendants").

## I. NATURE OF ACTION

### *"[I]t is unsafe for inmates. . . ."*[1]

1.      This is a civil rights class action brought by Plaintiff, Nathaniel Dexter Manning ("Plaintiff"), on behalf of himself and all others similarly situated, against Cocke County, Tennessee ("the County"); Cocke County Sheriff Armando Fontes, individually ("Sheriff Fontes"); Cocke County Sheriff's Office ("CCSO") Jail Administrator Josh Hartsell, individually ("Administrator Hartsell"); CCSO Corrections Officers Stephen Revill, individually ("Officer Revill"), Katrina Caldwell, individually ("Officer Caldwell"), and Jessica Huff, individually ("Officer Huff") (collectively, "Defendants"), for violations of his rights under the United States Constitution and Tennessee common and statutory law.

2.      Plaintiff's Complaint is centered upon the County's re-occurring system-wide failures to protect the safety and security of inmates incarcerated at the

---

[1] Cocke County Mayor Ottinger speaking on September 7, 2017, about why the Tennessee Corrections Institute's review committee indicated that the Jail was not re-certified.

Cocke County Jail ("Jail").[2] Based upon public statements of Sheriff Fontes and other County officials, Tennessee Corrections Institute ("TCI")[3] inspections and reports, inmate statements, and upon information and belief, violence among inmates at the Jail is increasing at an alarming rate. Since 2012, thousands of individuals incarcerated at the Jail have been subjected to the unsafe Jail conditions, subjected to inmate-on-inmate violence, and suffered serious injuries. Even now, after years of increasing inmate violence, the County, Sheriff Fontes, and Administrator Hartsell have taken no meaningful action to alleviate or mitigate the root cause of the violence: unsafe Jail conditions, including severe overcrowding and under-staffing.

3.    Official state data shows that the Jail is annually *the second most crowded jail in Tennessee.* It also appears that the Jail lacks sufficient manpower to supervise inmates. Historically, Jail officials have made no serious effort to separate violent or serious offenders from non-violent and less serious ones. In this case, like every other proposed class member, Defendants' deliberate indifference to inmate safety led to Plaintiff being improperly housed with violent inmates and viciously beaten, suffering serious injuries. Notably, Officer Revill, most recently a pizza delivery driver, was responsible for a critical failure – Plaintiff's cell assignment.

---

[2]The Cocke County Jail consists of two separate facilities, the Old Jail and the Jail Annex. Plaintiff refers to both facilities collectively as "the Jail." When referring to only one of the facilities, Plaintiff will attempt to do so by referencing the specific name of that facility.

[3]Under the authority of Tenn. Code Ann. § 41-4-140, the TCI is required to establish minimum standards for adult local jails, lock-ups, workhouses and detention facilities in the state.

-1-

4.     By December 9, 2019, when Plaintiff was booked, the County, Sheriff Fontes, and Administrator Hartsell all knew that the Jail had been decertified by the TCI[4] in 2017 "after two years of failed inspections and warnings about lax employee training, staffing shortages, inadequate medical care and safety violations[.]"[5] To be sure, it is undisputed that many of the Jail's most glaring deficiencies relate to "gross overcrowding" and "under-staffing." Worst of all, Sheriff Fontes has long conceded that these conditions pose a "serious risk of safety, and a serious liability for the County."[6]

5.     When Plaintiff was booked, the Jail had exceeded its 120-person maximum capacity for no fewer than **eight consecutive years**, largely hovering between *200% and 310% beyond capacity*. A month later, the Jail was *262.5% beyond capacity*, housing 215 inmates, leaving 95 inmates without beds.[7]

---

[4]The TCI's Board of Control establishes the standards to inspect and certify local correctional facilities.  Inspections and re-inspections are conducted within the mandated time-frame to ensure compliance of all standards for the purpose of certification.

[5]"*Cocke County Loses Jail Certification*," Knox News, Oct. 4, 2017, https://www.knoxnews.com/story/news/crime/2017/10/04/cocke-county-loses-jail-certificationgarners-lawsuit-over-32-year-old-inmates-death/725437001/ (last accessed Aug. 12, 2020).

[6]"*Sheriff: Cocke Co. Jail is 'Inhumane,' Poses 'Serious Risk to Safety*," WBIR News, Feb. 12, 2020, available at https://www.wbir.com/article/news/local/ sheriff-cocke-co-jail-is-inhumane-poses-a-serious-risk-tosafety/ (last accessed Aug. 12, 2020).

[7]In fact, summary report-data provided by the TCI indicates that since 2011, only one Tennessee county (Van Buren) has consistently had a larger overcapacity percentage of inmates in its jail than Cocke County. *See* historical TCI Jail Summary Reports https://www.tn.gov/correction/statistics-and-information/jail-summary-reports.html.

6.      In addition to acknowledging that gross overcrowding and under-staffing at the Jail have compromised inmate safety, Sheriff Fontes and other County officials also admit that these conditions – particularly the chronic overcrowding since 2011 – are responsible for the Jail's increasing number of inmate-on-inmate assaults.

7.      For certain, years of failed inspections and increasingly frequent reports of inmate-on-inmate assaults leave no doubt that Mayor Crystal Ottinger, Sheriff Fontes, Administrator Hartsell, and other County officials have long-known of this substantial risk to inmate safety, particularly now that inmate-on-inmate assaults are almost a daily occurrence. Yet, they have taken no meaningful action to address the unsafe conditions,[8] and by the time Plaintiff was booked in December 2019, the ever-worsening conditions had created an unconstitutionally-high level of violence.

8.      On January 10, 2020, Plaintiff – booked on non-violent charges –  became merely the latest victim of these perilous conditions. Weeks earlier, Plaintiff's fate was apparently sealed when former pizza delivery driver, Officer Revill, assigned him to a cell inhabited by a collection of known violent inmates, despite knowing that given the circumstances, this created a substantial risk that the slight (140-pound) Plaintiff would be assaulted.

9.      And so, on the morning of January 10, 2020, one of Plaintiff's cell-mates walked toward the Plaintiff, who was sitting on his own bed, and began savagely

---

[8] *See "Overcrowding Breeds Ugly Fights Inside Cocke County Jail,"* WVLT TV, Jan. 31, 2020, available at https://www.wvlt.tv/content/news/Overcrowding-breeds-ugly-fights-inside-Cocke-County-jail567474631.html (last accessed Aug. 12, 2020) (Sheriff Fontes: "This is not a new issue – it's been here along time.").

-3-

beating Plaintiff with his fists about the head, face, and upper body, landing one vicious blow after another to the left side of Plaintiff's face. Although Plaintiff tried to defend himself, another inmate grabbed him from behind and was holding him as his assailant beat him.

10.    In a crowded cell – occupied by up to 35 inmates – not one inmate helped the Plaintiff, who was able to push an alarm to alert Corrections Officers. Unfortunately, at that moment, the only on-duty Corrections Officers were across the street and railroad tracks in another facility, about 400 feet away.

11.    Corrections Officer Katrina R. Caldwell ("Officer Caldwell"), hired a month earlier, and Officer Revill eventually responded. They found him "bleeding from multiple lacerations to his head, his eye was swollen shut on the left side and he was stumbling around."

12.    By 1:15 p.m., as Plaintiff was bleeding, in great pain, and suffering from his multiple facial injuries, inmates in Cell 5 alerted officers that Plaintiff "was about to fall out." And so, five hours after Plaintiff was savagely beaten, suffering severe head and facial trauma, a nurse decided his injuries were serious enough to send him to the Newport Medical Center ("NMC"), where he was released by the CCSO on his own recognizance ("ROR").

13.    An initial medical evaluation showed that Plaintiff had suffered multiple facial fractures. Doctors at NMC decided that Plaintiff needed a higher level of care and arranged for him to be transferred to the University of Tennessee Medical Center ("UTMC") in Knoxville. Doctors there diagnosed Plaintiff with a "left

-4-

zygomaticomaxillary complex fracture with an orbital floor blowout fracture." The following day, Dr. Turner Emery performed surgery on Plaintiff to repair and close multiple facial fractures. Plaintiff's medical bills for the injury totaled $58,824.07.



Photographs of Nathaniel Dexter Manning taken shortly after he was beaten by inmate Kenneth Ray Odell and other inmates at the Cocke County Jail Annex in Newport, Tennessee. Manning suffered severe injuries to his face and eye socket, including multiple bone fractures that had to be surgically repaired.

14. The fact is that Plaintiff should have been safe in the custody of the County, Sheriff Fontes, and Administrator Hartsell. Having accepted Plaintiff into their facility as an inmate, however, the County, Sheriff Fontes, Administrator Hartsell, and Jail employees abandoned him to be viciously beaten by violent inmates.

15. The assault – like assaults on hundreds of other inmates over the past eight to ten years – was the foreseeable result of longstanding policies or customs of deliberate indifference to inmate safety, *i.e.*, uncaring tolerance of chronic and gross overcrowding and under-staffing, permitting a volatile environment of increased tension and inmate-on-inmate assaults, failing to promulgate sufficient safety protocols

-5-

and procedures to provide for the adequate monitoring and care of inmates housed in the Jail, and condoning the grossly inadequate hiring and training of Jail employees.

16.    Plaintiff alleges the following claims on behalf of himself and all others similarly situated:

> ■ Count One – Failure to Protect Plaintiff and Other Inmates (Against Sheriff Fontes and Administrator Hartsell);
>
> ■ Count Two – Failure to Protect Plaintiff and Other Inmates (Against Officer Revill);
>
> ■ Count Three – Failure to Protect Plaintiff and Other Inmates/Failure to Intervene (Against Officers Revill, Caldwell, and Huff);
>
> ■ Count Four – Municipal Liability for Policy, Custom, and Practice of Failing to Protect Inmates (Against Cocke County);
>
> ■ Count Five – Failure to Train and Supervise Corrections Officers to Protect Inmates From Violence (Against Cocke County, Sheriff Fontes, and Administrator Hartsell);
>
> ■ Count Sixth – Negligence and Gross Negligence (Against All Defendants); and
>
> ■ Count Seventh – Intentional Infliction of Emotional Distress (Against All Individual Defendants).

17.    Plaintiff also requests compensatory and punitive damages, as well as attorneys' fees, costs, expenses, and all other available and appropriate relief.

## II.   JURISDICTION AND VENUE

18.     This action is brought to redress alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1988, and the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, and for violations of Tennessee common law. Original jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343.

19.     This Court also has supplemental jurisdiction over any claims brought under Tennessee law, pursuant to 28 U.S.C. §1367, as such claims are so related to claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the Constitution.

20.     Venue is proper in this Court under 28 U.S.C. § 1391(b), as all incidents, events, and occurrences giving rise to the action occurred in Knox County, within the Northern Division of the Eastern District of Tennessee.

## III.   PARTIES

### A.     Plaintiff

21.     At all times material, Nathaniel Dexter Manning ("Plaintiff") was a citizen and resident of Cocke County. Plaintiff was a convicted prisoner at the time of the incident at the Cocke County Jail, having been arrested for, among other offenses, failure to appear and violating the terms of probation.

### B.     Defendants

22.     Cocke County, Tennessee ("the County") is a governmental entity and political subdivision of the State of Tennessee, duly organized, which funds and maintains the Jail and employs the persons working there. The County, as a local

-7-

government, is a public entity in accordance with 42 U.S.C. § 12131(1) and 42 U.S.C. § 12111(5). The County, upon information and belief, is also a recipient of federal financial assistance as required under 29 U.S.C. § 794.

23.     The County owns the Jail located in Newport, Tennessee. The County is responsible for, among other things, providing adequate funding for the operation of the Jail, including funding for training the Sheriff, the Sheriff's employees, and corrections officers, and funding to allow for adequate staffing and training of the Jail. At all times pertinent to the matters alleged herein, the County has employed fifteen (15) or more employees. It may be served through its chief executive officer, County Mayor Crystal Ottinger, at the Cocke County Courthouse, 360 East Main Street, Newport, TN 37821.

24.     The County possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the Sheriff's Office, and to assure that said actions, policies, rules, regulations, practices and procedures of the Sheriff's Office and its employees and agents comply with the laws and constitutions of the United States and of the State of Tennessee.

25.     The County and the Sheriff's Office are answerable for the safekeeping of persons in their custody and responsible for all matters relating to the selection, supervision, promotion, training, and discipline of employees, including uniformed and non-uniformed employees.

-8-

26.     At all times relevant to this Complaint, Sheriff Armando Fontes ("Sheriff Fontes") was the duly-elected Sheriff of Cocke County, statutorily responsible for the screening, hiring, firing, training and the supervision of Sheriff's Office personnel; and responsible for the safety and welfare of those in his custody. Specifically, Sheriff Fontes was responsible for operating the Jail and Jail Annex and overseeing operations. That responsibility included, but was not limited to, supervising the Corrections Officers, who served at his will in their respective duties at the jail and providing adequate staffing at the Jail.

27.     Sheriff Fontes is the proper party to be sued under 42 U.S.C. §1983. He is sued in his individual capacity and as principal on his official bond. Sheriff Fontes was operating under color of law. He is a "policymaker" within the meaning of that term as applied by the Supreme Court in *Pembauer v. City of Cincinnati*, 479 U.S. 469 (1986), and as the official head of a "public entity" providing services, programs, or activities. Sheriff Fontes is, upon information and belief, a citizen and resident of Cocke County and may be served with process at the CCSO, 111 Court Avenue, Newport, Tennessee, TN 37821.

28.     At all times relevant to this Complaint, Defendant, Josh Hartsell ("Administrator Hartsell"), was employed by the CCSO as Jail Administrator, a position to which he was appointed by Sheriff Fontes. He acted with the authority invested in him by virtue of employment with the County, and is a state actor under § 1983. As a supervisor at the Jail, Administrator Hartsell's responsibilities included, but were not limited to, providing sufficient training to Jail employees, including

-9-

corrections officers, and creating and implementing adequate polices and procedures to ensure that inmates were safe. At all relevant times, he was jointly responsible with Sheriff Fontes for the management of the Jail.

29.     Administrator Hartsell is sued in his individual capacity and as principal on his official bond. He was operating under color of law. Administrator Hartsell is, upon information and belief, a citizen and resident of Cocke County and may be served with process at the CCSO, 111 Court Avenue, Newport, Tennessee, TN 37821.

30.     At all times relevant to this Complaint, Defendant, Corrections Officer Stephen Revill ("Officer Revill"), was employed by the CCSO as a corrections officer. He is sued in his individual capacity and as principal on his official bond. He was responsible for assessing Plaintiff for purposes of classifying him for a housing assignment at the Jail Annex. He was operating under color of law. Officer Revill is, upon information and belief, a citizen and resident of Cocke County and may be served with process at the CCSO, 111 Court Avenue, Newport, Tennessee, TN 37821.

31.     At all times relevant to this Complaint, Defendant, Corrections Officer Katrina Caldwell, individually ("Officer Caldwell"), was employed by the CCSO as a corrections officer. She is sued in her individual capacity and as principal on her official bond. She was operating under color of law. Officer Caldwell is, upon information and belief, a citizen and resident of Cocke County and may be served with process at the CCSO, 111 Court Avenue, Newport, Tennessee, TN 37821.

32.     At all times relevant to this Complaint, Defendant, Corrections Officer Jessica Huff, individually ("Officer Huff"), was employed by the CCSO as a corrections

-10-

officer. She is sued in her individual capacity and as principal on her official bond. She was operating under color of law. Officer Huff is, upon information and belief, a citizen and resident of Cocke County and may be served with process at the CCSO, 111 Court Avenue, Newport, Tennessee, TN 37821.

33.     Various persons or entities not made Defendants in this lawsuit, including but not limited to County officials or CCSO employees, have participated with Defendants in the violations asserted in this Complaint and have performed acts and made statements in furtherance thereof.

## IV. FACTUAL ALLEGATIONS

### A.     Snapshot of the Cocke County Jail

34.     Cocke County currently operates two separate jails. The Old Jail, the facility housing female inmates, is located above the Courthouse. It was constructed in 1930. The Jail Annex, which houses male inmates, is located about 400 feet across Main Street, and across the railroad tracks.[9] When inmates need to cross the street to go to court, they are cuffed and chained, then transported by deputies.[10]

---

[9] *See "Sheriff: Cocke Co. Jail Is 'Inhumane,' Poses a 'Serious Risk to Safety'"* https://www.13wmaz.com/article/news/local/sheriff-cocke-co-jail-is-inhumane-poses-a-serious-risk-to-safety/51-e59b4b4a-fc84-4314-9580-a0315c3a172f

[10] https://www.wvlt.tv/content/news/Cocke-County-leaders-address-courthouse-security-and-jail-issues-450489593.html

35.     According to TCI reports and Sheriff Fontes, the Jail has enough room for about 142 inmates. On most days, however, the Jail houses over 200 inmates, and inmates are forced to sleep on the floor. Since at least July 2012, the average daily population in the Jail has exceeded its design capacity.

36.     The Jail and Jail Annex have failed every TCI inspection since 2017. Data from the TCI indicates that, as of December 31, 2019, the month Plaintiff was booked, there were 186 inmates at the Jail, with beds for just 120 of them, leaving 66 inmates to sleep on the floor. A month later, there were 215 inmates, leaving 95 inmates on the floor. Official records show that *only one other county in the state* – Van Buren – had a larger over-capacity percentage of inmates in January 2020.

## B.     Dexter Manning Is Booked Into the Jail Annex

37.     Nathaniel Dexter Manning ("Plaintiff") was an outstanding student at Cosby High School, maintaining membership in the National Honor Society. Plaintiff maintained his honor's status while starring for Cosby's basketball team, helping lead Cosby to the state championship.

38.     In 2018, Plaintiff had been convicted of misdemeanor theft and joyriding. He was on probation for those offenses, when, on December 9, 2019, the now-31-year old Plaintiff was arrested by CCSO deputies for violation of probation (for failing a mandatory drug screen) and for failure to appear. He was booked into the Jail Annex.

-12-

## C. Failures to Classify and Segregate Violent From Non-Violent Inmates.

39.  On information and belief, Corrections Officers routinely fail to conduct background checks to classify and segregate inmates. Plaintiff was assessed by Officer Revill, 50, most recently been employed by Papa John's as a pizza-delivery driver. Officer Revill failed to do his job, incorrectly classifying Plaintiff as a "medium" custody level inmate rather than a "minimum" custody level inmate. He did this notwithstanding having completed a "Classification and Housing/Separation Profile" form for Plaintiff. Officer Revill failed to check Plaintiff's criminal history and wound up wrongly assigning Plaintiff to Jail Annex, Cell 1, where a collection of up to 35 violent inmates awaited him.[11]

40.  Jail corrections officers routinely do not review criminal histories on inmates before classifying them, as they are required to do.[12] In Plaintiff's case, for example, Officer Revill purportedly completed a "classification and housing/separation profile" to make Plaintiff's cell assignment. It is allegedly a "point-based" system, with 5 or fewer points indicating classification as a "minimum custody level" inmate. Plaintiff's criminal history could not, under any reasonable assessment, justify a custody level beyond "minimum." Yet, Officer Revill completed the form and intentionally improperly characterized Plaintiff's custody level as "medium."

---

[11]There were reasonable alternatives to placing Plaintiff in Cell 1 with violent inmates, which would have avoided the substantial risk of injury to Plaintiff.

[12]https://www.nashvillescene.com/news/features/article/21106770/tennessees-county-jails-are-plagued-by-overcrowding-and-underfunding

-13-

41.     Although Plaintiff's criminal history contains no convictions that could be construed as "moderate," much less "high," on the scale of seriousness, Officer Revill indicated otherwise, assigning him 4 points for this factor. Moreover, although Plaintiff's criminal history contains no convictions for "assaultive behavior,"[13] Officer Revill inexplicably indicated otherwise, assigning him 3 points for this factor. Furthermore, certain "stability factors" are supposed to be recognized in the profile, resulting in point-deductions. While Officer Revill acknowledged that these factors should result in a deduction of 3 points from Plaintiff's profile, he deducted just a single point.

42.     In the end, Officer Revill assessed Plaintiff as having a total of *7 points*, enough to classify him as a "minimum custody level" inmate. However, all of the factors, if properly evaluated, should have led Officer Revill to attribute no more than *5 points* to Plaintiff, making him no more than a "minimum custody level" inmate.

43.     On the other hand, inmate Kenny Ray Odell's criminal history reveals that he has a lengthy record of violent crimes, including multiple convictions for aggravated assault, as well as multiple gun-crimes. Historically, he has been characterized as a "maximum risk." To be sure, Odell has spent a lot of time in the custody of the Tennessee Department of Correction for violent crimes. Yet, for reasons unexplained and unknown, Officer Revill put Plaintiff and Odell (and other violent offenders) in the same cell.

_____

[13]There was a 2008 aggravated assault charge, but the disposition entered for that charge was similar to what is otherwise known as a "pass and dismiss."

-14-

### D. Plaintiff Is Brutally Assaulted By Inmates, As Corrections Officers Are Absent and In a Separate Facility.

44. At approximately 8:35 a.m. on January 10, 2020, Plaintiff was sitting on his bunk in Cell 1 of the Jail Annex, minding his own business. Suddenly, and without warning, Odell, with whom Plaintiff had never interacted or conversed, approached him and began punching him viciously with his fists about the face, head, and torso, primarily to the left side of Plaintiff's face,[14] as yet another inmate (Zeke Thompson) held onto Plaintiff's neck from behind, restraining him. Plaintiff tried to defend himself, but at six feet tall, weighing just 140 pounds, he was unable to do so. He was eventually able to get to his feet, and although another inmate had him locked in a choke-hold, Plaintiff was ultimately able to make it over to push an alert button, approximately 20 feet away, to summon Corrections Officers.

45. Due to overcrowding and under-staffing, not only were security checks on inmates not being performed in the Jail Annex with the frequency recommended by the TCI, but at that moment, upon information and belief, the three on-duty officers –

---

[14]It remains unknown exactly why Odell attacked Plaintiff.

Revill,[15] Caldwell,[16] and Huff[17] – were in another building 400 feet away, across the street, and on the other side of the railroad tracks. Nor did any of the other two to three dozen inmates inside Cell 1 come to Plaintiff's aid.

46.     Eventually, Officers Caldwell and Revill responded and found Plaintiff had been beaten by other inmates. They moved him to the medical unit, where a nurse treated his injuries until approximately 9:00 a.m.

### E.     Plaintiff Is Hospitalized for Severe Facial Trauma, Multiple Facial Fractures, and Surgical Repair of Those Fractures.

47.     Plaintiff was eventually moved to the "control room," to the visitation area, and then to "Annex 5 Cell." At about 1:15 p.m., other inmates from Annex 5 Cell informed Officer Revill that Plaintiff was "about to fall out." Plaintiff was moved to the Jail Annex control room, to which a nurse was summoned from the Old Jail. Five hours after Plaintiff was viciously beaten, moved from room-to-room, and left bloodied and suffering from severe facial trauma in a cell with other inmates, a nurse decided his

---

[15]Revill had most recently been employed by Papa John's as a pizza delivery driver,

[16]Officer Caldwell, 27, had applied for a position as dispatcher in October 2019, but had instead been hired in November 2019 as a Corrections Officer. Caldwell, a high school graduate, had been terminated by one of her three past employers for excessive absences. She appears to have been hired because she was a friend of another Cocke County Corrections Officer, who she listed as a reference.

[17]Officer Huff also applied for work in October 2019. Her application was especially bare, failing to list her education or any previous employment. She had recently filed bankruptcy and been divorced. Her personnel file is devoid of any documentation of her education or identity, *e.g.*, diploma, birth certificate, driver's license. She did list Chief Deputy Derrick Woods, Administrative Captain C.J. Ball, and Administrator Hartsell as references. That appears to have been sufficient to have warranted her hiring.

-16-

injuries were serious enough to send him to the Newport Medical Center ("NMC") for further evaluation. Plaintiff was transported by cruiser to NMC and released on his own recognizance.[18]

48.     Plaintiff arrived at the NMC emergency department at about 1:53 p.m. on January 10, 2020. He was evaluated and found to have "fractures of anterior and lateral maxillary sinus walls, the orbital floor and the lateral orbital wall"[19] and a zygomatic bone fracture.[20] After evaluating Plaintiff, doctors at NMC determined that he needed a higher level of care and arranged for his transfer by EMS to the University of Tennessee Medical Center ("UTMC") in Knoxville.

49.     Doctors at UTMC diagnosed Plaintiff with a "left zygomaticomaxillary complex fracture with an orbital floor blowout fracture."[21] After being stabilized,

---

[18]Cocke County and Sheriff Fontes has adopted a policy of releasing inmates "on their own recognizance," or "ROR," in order to avoid medical costs associated with injuries suffered at the Jail.

[19]The orbit, also called the eye socket, is a bony structure that protects the eye. The bottom of the orbit is called the orbital floor. It separates the eye from a sinus. An orbital floor fracture is a break in the orbital floor.

[20]A zygoma fracture is a break in one of the bones to the face. The zygpoma forms the part of your cheekbone that you can feel under your eye. The main part of the zygoma meets the bone that forms the middle part of your face (the maxillary bone) under your eye.  The zygoma also has an arched part that extends along the side of your face to meet the bone that forms the side of your head (temporal bone).

[21]Attached as Exhibit 1 are photographs of Plaintiff's face immediately following the assault.

-17-

Plaintiff was admitted to UTMC for surgery. On January 11, 2020, Dr. Turner Emery performed surgery on the Plaintiff to repair and close his multiple facial fractures. Plaintiff's medical bills for treatment and surgery totaled $58,824.07.

### F. Criminal Charges for Only One of Plaintiff's Assailants

50.    About five days after being beaten, County authorities reported that they had completed an investigation in connection with the assault. Sheriff Fontes said that based upon facts from the CCSO's investigation, a criminal warrant had been issued naming Odell with aggravated assault. However, the other inmate who grabbed Plaintiff and held onto him while Odell beat him, Thompson, was never charged for his own involvement in the assault on the Plaintiff.

### G. Unsafe Jail Conditions: Antiquated Facilities, Overcrowding, Under-staffing, and Unqualified Officers

*"There's no sense that anybody should have to live like this."*[22]

51.    Sheriff Fontes has told Cocke County's governing body, the County Commission, that the Jail "basically feels like a sauna." In fact, inmates have described Jail conditions as "nasty." The showers do not function properly ("they're all messed up," one said) and the ceiling leaks so bad when it rains that inmates sometimes sleep on the floor just to keep from getting wet. "There's leaky roofs, there's inadequate clothing," Commissioner Forest Clevenger said. In a media interview with WVLT-TV, Chief Deputy Derrick Woods pointed out rotting ceilings, leaks, and holes in the floor

---

[22]A Cocke County Jail inmate, speaking to a WBIR-TV news reporter.

-18-

of the Jail.[23] Sheriff Fontes has acknowledged the Jail is "antiquated and out of date."[24] "These are human beings and they should be treated like human beings," Clevenger said. "We're obligated by the laws of this country and laws of the state to provide adequate shelter for these people and we are not doing it."

52.     In addition to being hot, "nasty," leaky, rotting, etc., Sheriff Fontes told WVLT-TV that "one of the reasons why our jail was de-certified" was "because of the fact of overcrowdedness . . . .'"[25] Sheriff Fontes informed County Commissioners that the Jail is "grossly overcrowded and under staffed," and that "this is a serious risk of safety, and a serious liability for the county."[26] These conditions, Sheriff Fontes told one reporter, also prevent him from properly segregating inmates.[27]

53.     By the time Plaintiff entered the Jail Annex in December 2019, the Jail was in the midst of an eight-year period of continuous overcrowding, exceeding its 120-person capacity by between *200% and 310%*. In January 2020, the Jail was *262.5% beyond capacity*, with 215 inmates.[28]

---

[23]https://www.wvlt.tv/content/news/Cocke-County-leaders-address-courthouse -security-and-jail-issues-450489593.html

[24]*Id.*

[25]*Id.*

[26]*See* "*Sheriff: Cocke Co. Jail Is 'Inhumane,' Poses a 'Serious Risk to Safety'*" https://www.13wmaz.com/article/news/local/sheriff-cocke-co-jail-is-inhumane-poses- a-serious-risk-to-safety/51-e59b4b4a-fc84-4314-9580-a0315c3a172f

[27]*Id.*

[28]In fact, summary report-data provided by the Tennessee Corrections Institute ("TCI"), dating back to the year 2000, indicates that since 2011, only one

Case 2:21-cv-00004-TAV-CRW     Document 1     Filed 01/11/21     Page 23 of 60     PageID #: 23

54.     County officials know – through years of failed inspections, multiple lawsuits alleging civil rights violations, and hundreds of inmate-on-inmate beatings[29] – that Jail conditions are inhumane and overcrowded, and that inmate-on-inmate assaults are almost a daily occurrence. Still, they have done nothing to alleviate the conditions, provide adequate resources, or fund a new Jail.[30]

55.     Notably, the TCI found that overcrowding at the Jail has led to a rise in inmate-on-inmate assaults. It "strongly recommended" that the County fund additional Jail staff, and take steps to update the Jail's "deteriorating" buildings.[31]

---

County in the state (Van Buren) has consistently had a larger overcapacity percentage of inmates in its jail than Cocke County Jail. *See* historical TCI Jail Summary Reports https://www.tn.gov/correction/statistics-and-information/jail-summary-reports.html.

[29]In 2018, more than 50 assaults were recorded between inmates and Jail officers. *See* "*Overcrowding Breeds Ugly Fights Inside Cocke County Jail,*" WVLT TV, Jan. 31, 2020, available at https://www.wvlt.tv/content/news/Overcrowding-breeds-ugly-fights-inside-Cocke-County-jail567474631.html (last accessed Aug. 12, 2020). More than 50 inmate-on-inmate assaults occurred again in 2019 and 2020.

[30]*See* "*Overcrowding Breeds Ugly Fights Inside Cocke County Jail,*' WVLT TV, Jan. 31, 2020, available at https://www.wvlt.tv/content/news/Overcrowding-breeds-ugly-fights-inside-Cocke-County-jail567474631.html (last accessed Aug. 12, 2020) (Sheriff Fontes: "This is not a new issue – it's been here along time.").

[31]https://www.nashvillescene.com/news/features/article/21106770/tennessees-county-jails-are-plagued-by-overcrowding-and-underfunding

-20-

56. The TCI's recommendation had little or no effect on improving conditions at the Jail. "Although this is definitely an issue that we take seriously, and it's an issue, it's one in a series of issues," Clay Blazer, chairman of the County Commission, told WVLT-TV. According to Blazer, there are not enough funds for a new jail.[32]

57. In fact, the County Commission has been so disinterested with Jail conditions that when the issue was on the body's meeting agenda recently, so few Commissioners attended the meeting that the body lacked a quorum to even conduct official business.

58. The unsafe Jail conditions also put inmates' safety at risk, as Sheriff Fontes concedes that overcrowding is a breeding ground for fights between inmates.[33] Inmates are locked away in dorm-style cells, sometimes shared between more than 25 different people. "When you're in a large group – it's like a street gang. They all feed off each other," Sheriff Fontes said.[34] "Put yourself in their shoes. Imagine being locked in a cell 24 hours a day, 7 days a week, with 24 other people."[35]

59. Sheriff Fontes also concedes that fights are commonplace in the Jail, which forces Correction Officers to break them up – with few holding cells to separate

---

[32]https://www.wvlt.tv/content/news/Cocke-County-leaders-address-courthouse-security-and-jail-issues-450489593.html

[33]*"Overcrowding Breeds Ugly Fights Inside Cocke County Jail"* (Jan. 31, 2020) https://www.wvlt.tv/content/news/Overcrowding-breeds-ugly-fights-inside-Cocke-County-jail-567474631.html

[34]*Id.*

[35]*Id.*

-21-

inmates. He further acknowledges that liability comes with these conditions, stating that "a jail is a community's largest liability when it comes to lawsuits," confessing that "This is not a new issue – it's been here a long time."[36]

60. Along with run-down facilities, overcrowding, under-staffing, and increasing inmate-on-inmate assaults, the Jail and Jail Annex are also staffed by inexperienced corrections officers. Sheriff Fontes told the media: "You don't get good quality people – you get a young person looking for a job who lacks the life experiences to help them handle situations. They need to be the ones who are patient and calm and not react to a mouthy inmate or someone who's being belligerent." It is commonplace for five or fewer officers to manage the two Jails, "resulting in decreased safety and security."[37]

61. Systemic deficiencies in facilities, procedures or staffing can amount to a pattern of deliberate indifference.

**H. Failed Inspections and Decertification of the Jail.**

62. For a number of years, the Jail has failed to satisfy even the minimum standards to achieve state-certification. Inspectors for the TCI have reported "alarming deficiencies regarding the structure of the building, security, and medical services," all which they relate to jail overcrowding and under-staffing.

---

[36]*Id.*

[37]https://www.nashvillescene.com/news/features/article/21106770/tennessees-county-jails-are-plagued-by-overcrowding-and-underfunding

63.     In repeatedly refusing to certify the Jail on inspection after inspection over the past four years, TCI inspectors have found, among many others, the following:

- the Jail and Jail Annex are overcrowded and understaffed,

- under-staffing makes "it virtually impossible to meet the needs of the facility and perform the required task to ensure safety and security,"

- "limited staff is affecting the ability to perform required functions relating to security, custody, and supervision of inmates,"

- insufficient staffing is resulting in security checks being conducted visually by camera,

- security checks on inmates are not being timely properly conducted,

- poor "staff performance quality,"

- Jail staff cannot properly supervise inmates, and

- Jail staff is inadequately trained.

64.     More recent inspections of the Jail and Jail Annex by TCI inspectors revealed that:

- "limited staff is affecting the ability to perform required functions relating to security, custody, and supervision of inmates,"

- "security checks" on inmates "are negatively affected due to minimal staffing availability and inability to respond to needed duties,"

- "[m]any of the deficiencies" in the Jail and Jail Annex "are a result of inmate overcrowding and minimal staff available to perform the task required,"

-23-

- the Jail and Jail Annex have consistently failed to provide "appropriate housing of inmates for classification purposes,"

- "Criminal Histories on inmates for classification purposes are not being completed on inmates prior to placement in general population,"

- "[w]ith the continued rise in the inmate population, proper classification of inmates is unattainable," and

- "there is insufficient housing to accommodate overcrowding conditions."

65.     The County, Sheriff Fontes, and Administrator Hartsell knew the TCI had decertified the Jail and Jail Annex in 2017 "after two years of failed inspections and warnings about lax employee training, staffing shortages, inadequate medical care and safety violations[.]"[38]

66.     On September 7, 2017, Mayor Crystal Ottinger and Sheriff Fontes appeared before the Cocke County Corrections Partnership workshop to discuss their recent appearance before the TCI.  Mayor Ottinger bluntly stated that the TCI's review committee indicated that the Jail was not re-certified because the committee "believes *it is unsafe for inmates and staff*."

67.     The 2018 TCI report condemned the Jail's "deficiencies . . . related to the continued overcrowded conditions as well as the outdated, deteriorating, and antiquated facility," noting "[t]his serious situation is only heightened by the need for

---

[38]"*Cocke County Loses Jail Certification*," Knox News, Oct. 4, 2017, available at https://www.knoxnews.com/story/news/crime/2017/10/04/cocke-county-loses-jail-certificationgarners-lawsuit-over-32-year-old-inmates-death/725437001/ (last accessed Aug. 12, 2020).

-24-

additional staff on each shift to provide the necessary supervision throughout the facility." It also criticized excessive turnover: "[t]he current budget allows for 25 full-time officers, which fails to meet the minimum number of staff required."

### I. Correction Officer Corruption, Civil Rights Cases, Inmate-on-Inmate Assaults

68. The CCSO is not, according to reports from Sheriff Fontes and media over the past few years, a bastion of law enforcement morality. On August 30, 2016, two terminated employees of the CCSO – Autumn Davis, a nurse, and Shayelen Scheffers, a corrections officer, were indicted for obtaining controlled substances by fraud and conspiracy to possess a controlled substance. Davis used her position as a nurse to get Oxycodone and Hydrocodone pills. Scheffers helped.

69. On March 30, 2017, Charles Webb, a former employee accused of bringing drugs into the Jail Annex, was indicted for four counts of introduction of drugs into a penal institution. Since the indictment, Webb has been fired and an investigation began, according to the CCSO.

70. Officer Alyssa Lane and Cpl. Jason Phillips were also terminated on June 29, 2017 for "committing serious policy violations and potential civil rights violations." In a release about the firings, Sheriff Fontes stated, "[i]n this case, I can't give any details, with these two employees, they were in clear violation of departmental policy . . . . And they also in my opinion, I think that they are potentially in violation of civil rights, based on their actions." Sheriff Fontes stated that he personally contacted the FBI to investigate this case due to the potential of civil rights violations.

-25-

71.     Two weeks later, on July 13, 2017, still two more Jail employees were terminated for smuggling methamphetamine into the Jail to give to inmates. On August 17, 2017, the CCSO also arrested the two, Kyle VanDaley and Heather Boyd, who were charged with official misconduct and introducing contraband into a penal facility.

72.     In September 2017, inmate Amanda Hill, a diabetic and recent domestic-assault victim, whose former boyfriend had recently doused her with rubbing alcohol and set her afire, causing second- and third-degree thermal burns from her shoulders to her legs, was arrested on a probation violation and entered the Jail. Her condition required intensive medical care. Suffering unbearable pain due to the thermal burns, Ms. Hill begged for medical attention. Two days later, Ms. Hill was found unresponsive in her cell and died, having received no meaningful medical care. Ms. Hill's mother filed suit against the County, Sheriff Fontes, Corrections Officers, and others for civil rights violations and wrongful death. That case was settled. *See Burgin v. Cocke County et al.*, No. 2:17-cv-00173-JRG-MCLC, DE 44 (E.D. Tenn. May 21, 2019).

73.     On information and belief, inmate-on-inmate assaults at the Jail and Jail Annex are commonplace. Some assaults are reported by media, especially when charges are brought against the offenders. For example, in July 2017, three inmates assaulted Kevin Hill – violently punching and kicking him in the head as he lay on the floor of his cell. And on July 15, 2018, two separate violent assaults occurred at the Jail – one in which five inmates jumped another, who was transported to the hospital with serious injuries, and another in which two inmates assaulted inmate Luke Gibson.

**J.  Real World Consequences**

74.  These deficiencies have real world consequences. In this case, a number of the deficiencies found by the TCI inspectors directly and/or indirectly impacted Plaintiff's safety as an inmate, including the under-staffing, poor staff performance, poor quality staff, inadequate training, and failure to perform security checks on inmates.[39]

**K.  Circumstances Require Discovery to Permit Plaintiff to More Precisely Allege His Claims.**

75.  Plaintiff was compelled to file this Complaint without the benefit of information available only to the Defendants. Plaintiff was grabbed from behind and beaten so viciously that he cannot recall certain specific details about the assault and its aftermath. Finally, more precise allegations might have been made if the County had more fully responded to Plaintiff's public records request.

76.  Accordingly, many of the allegations in this Complaint have been made upon information and belief, after a full investigation. Consequently, more precise allegations cannot be made at this time.

---

[39]There have been other serious real world consequences as well.  For example, in August 2016, after an inmate overdosed on drugs smuggled into the Jail, Sheriff Fontes stated:

> "This is a prime example of the amount of catastrophic liability our jail faces daily. I have reported time and time again to the County Commission that we need adequate manpower and a better physical facility."

-27-

# V.  WAIVER OF IMMUNITY

77.    The County has waived immunity for negligence of the county and county employees, misconduct of deputies acting under color of law, and for the negligence of deputies or employees of the CCSO or the County, as set out in Tenn. Code Ann. §29-20-305, and for intentional acts or misconduct done by deputies under color of law, as set out in Tenn. Code Ann. §8-8-302-302.

78.    There is no immunity for individuals for criminal conduct, or conduct which is willful or malicious.

# VI.  CLASS ALLEGATIONS

79.    Plaintiff brings his claims both individually and on behalf of a proposed class of inmates and former inmates at the Jail from June 2017 until the date of the trial, under Rules 23(a), (b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

80.    *Class Definition.*  Plaintiff proposes the following Class, subject to modification by the Court as required:

> All adult men and women who, since June 20, 2017, were, are now, or will be in the future, incarcerated in the Cocke County Jail.
>
> All inmates incarcerated in the Jail are, and have been for the past ten years, at substantial risk of serious harm due to the dangerous conditions of confinement (including overcrowding, under-staffing, lack of adequate training and supervision) and policies,  practices, customs of deliberate indifference to the safety and security of inmates.

81.    *Numerosity: Fed. R. Civ. P. 23(a)(1).* The proposed class as defined is sufficiently numerous that joinder of all members of the class is impracticable and

unfeasible. Currently, upon information and belief, there are approximately 200 inmates in the Jail and Jail Annex, and thousands of individuals in the community on probation, mandatory supervision, home confinement, or other post-release supervision, all of whom are subject to being returned to Jail at any time on an alleged violation or revocation of their supervision or to participate in civil or criminal court proceedings. In addition, thousands of individuals have been incarcerated at the Jail since the onset of unsafe Jail conditions, as described above. Due to the County's failure to adequately train and supervise corrections officers and the culture of insecurity that has resulted from the long-standing unsafe Jail conditions, Jail inmates are at risk of being harmed by inmate-on-inmate violence.

82.     Class members are identifiable using records maintained in the ordinary course of business by Defendants.

83.     ***Commonality: Fed. R. Civ. P. 23(a)(2).*** There are questions of law and fact common to the Class, including, but not limited to whether the County's failure to train and supervise corrections officers, unsafe jail conditions, and failure to protect inmates from inmate-violence violates the Eighth and Fourteenth Amendments to the United States Constitution.

84.     ***Typicality: Fed. R. Civ. P. 23(a)(3).*** The claims of the named Plaintiff is typical of the claims of the members of the proposed class. Plaintiff and all other members of the class have sustained similar injuries arising out of and caused by the County's common course of conduct and policies in violation of the law as alleged herein.

-29-

85.     ***Adequacy: Fed. R. Civ. P. 23(a)(4).*** Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of putative Class members because he has no disabling conflict(s) of interest that would be antagonistic to those of the other Class members. Plaintiff and Class members seek to enjoin the unlawful acts and omissions of the County. Plaintiff has retained counsel who are competent and experienced in complex class action litigation and civil rights litigation.

86.     ***Fed. R. Civ. P. 23(b)(1)(A) and (B).*** Since the number of Class members is in the hundreds or thousands, separate actions by individuals could result in inconsistent and varying decisions, which in turn would result in conflicting and incompatible standards of conduct for the County.

87.     ***Fed. Civ. P. 23(b)(2).*** This action is also maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because the County has acted and refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class and will apply to all members of the class.

88.     ***Fed. R. Civ. P. 23(b)(3).*** There are common questions of law and fact that predominate over any questions affecting only the individual members of the Class.  The wrongs alleged against the County are common to each and every member of the putative Class. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce the County to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against the County is small.

-30-

Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

## VII. CLAIMS FOR RELIEF

### COUNT I

### FAILURE TO PROTECT PLAINTIFF AND OTHER INMATES

### VIOLATION OF CIVIL RIGHTS LAWS UNDER COLOR OF LAW
42 U.S.C. § § 1983 and 1988

### (Against Sheriff Fontes and Administrator Hartsell)

89.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

90.     Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws. Here, Sheriff Fontes and Administrator Hartsell were acting under color of state law.

91.     From the moment of Plaintiff's incarceration, the County, Sheriff Fontes and Administrator Hartsell owed him a duty of care to protect him from harm. A special relationship existed between Plaintiff and those Defendants, which gave rise to that duty and they breached their duty by failing to protect him.

92.     At the time of the assault, the law was clearly established that Defendants' deliberate indifference to the safety of inmates from harm is a constitutional violation.

-31-

93. When Plaintiff was booked, he was incarcerated under conditions that posed a substantial risk of harm to his physical safety. Defendants knew or should have known of this risk, yet they failed to abate this risk, or to even mitigate it.

94. Sheriff Fontes and Administrator Hartsell, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Plaintiff's safety, and to the safety of other inmates, by, among other things:

  ▪ failing to take action to ameliorate the chronic and persistent overcrowding;

  ▪ failing to hire, train, and supervise qualified Corrections Officers to work and supervise inmates;

  ▪ failing to implement effective policies or procedures to properly classify inmates and then segregated non-violent inmates from violent inmates;

  ▪ failing to implement policies or procedures to insure that one or more Corrections Officers can rapidly respond to inmate-distress alerts in the Jail Annex, where dozens of inmates – many of whom were violent – are housed; and

  ▪ failing to implement policies or procedures to insure that Corrections Officers perform regular and routine security checks on inmates.

95. As demonstrated by repeated public statements and official reports, County officials, including Mayor Ottinger, the Board of Commissioners, Sheriff Fontes, and Administrator Hartsell, knew – for many years – that the Cocke County's Jails were overcrowded, understaffed, and unable to provide safe and secure facilities for the inmates it housed due to lack of resources. Despite this knowledge, those County officials failed to address these serious problems. The County, the Sheriff, and

-32-

the Jail Administrator acted with deliberate indifference to the substantial risk of serious harm to inmates such as the Plaintiff.

96. Sheriff Fontes and Administrator Hartsell are supervisory officials for the CCSO and are responsible for the implementation of policies and procedures regarding the booking, classification, and segregation of inmates, and all measures to insure inmate safety and security.

97. The County, Sheriff Fontes, and Administrator Hartsell also knew that the Corrections Officers were ill-experienced, ill-trained, and otherwise ill-equipped to deal with the tense Jail environment created by the unsafe conditions of confinement.

98. At all times material hereto, CCSO, Sheriff Fontes, and Administrator Hartsell knew that Corrections Officers, including Officer Revill, were housing dangerously violent inmates with non-violent inmates or inmates at risk of assault, creating the potential for inmate-violence.

99. At all times material hereto, Sheriff Fontes and Administrator Hartsell also had the authority and ability to segregate inmates according to their propensity for violence and to instruct Corrections Officers to segregate inmates accordingly. *See* Tenn. Code Ann. § 41-4-103.

100. On information and belief, Sheriff Fontes and Administrator Hartsell knew that Officer Revill and other Corrections Officers were disregarding the violent criminal histories of inmates and intentionally placing violent offenders with non-violent inmates, notwithstanding the risk of harm to those non-violent offenders. Yet, they failed to correct this and failed to implement a proper classification system,

-33-

knowing their failure would likely result – and has resulted – in physical harm to weaker, non-violent inmates by habitually violent offenders.

101.    As supervisory officials, Sheriff Fontes and Administrator Hartsell were well aware that the failure to have an adequate classification and/or segregation system would result in increased instances of inmate-on-inmate assault, like the assault on Plaintiff, and the other assaults. Nevertheless, on information and belief, they created a substantial risk of harm to Plaintiff and other inmates by implementing or ratifying policies, practices, and/or customs that deprived Plaintiff of his right to be free from physical assault while confined in the Jail, including:

> ■ accepting prisoners despite well beyond the maximum capacity;
>
> ■ failing to take measures at their disposal to reduce the inmate population;
>
> ■ failing to implement a proper classification system so as to segregate known violent inmates from non-violent inmates; and
>
> ■ failing to staff the Jail with competent and qualified officers to insure that inmates are properly classified at booking, housed accordingly, and supervised at all times.

102.    Sheriff Fontes and Administrator Hartsell either purposefully caused the harm to Plaintiff and other inmates or acted with "deliberate indifference" to such harm. They knew of and inexplicably disregarded the substantial risk to Plaintiff's health or safety.

103.    The substantial risk of inmate attacks at the Jail and Jail Annex is longstanding, pervasive, and well-documented. Because Sheriff Fontes and

-34-

Administrator Hartsell have continuously been exposed to reliable information concerning the risks, *e.g.*, via incident reports of assaults, TCI inspections and reports, frequent media investigations and news reports, lawsuits, they must have known about it. Nevertheless, the risks were so obvious that they had to have been known. Neither official took action to respond reasonably to the risk.

104.    These officials also knew that by (1) routinely failing to properly classify inmates based upon the seriousness of their offenses and propensity for violence, as Officer Revill had done in Plaintiff's case, and (2) routinely failing to station sufficient Corrections Officers inside the Jail Annex to supervise the dozens of inmates there or at least doing regular security checks, they were being deliberately indifferent to or tacitly authorizing those practices. If Plaintiff had been properly segregated, and/or if sufficient Corrections Officers had been stationed inside the Jail Annex supervising the dozens of inmates housed there or performing regular security checks, it is likely that Plaintiff would not have suffered serious injuries.

105.    As a direct and proximate result of the acts or omissions of these Defendants, Plaintiff and other inmates suffered serious injuries. Plaintiff suffered head trauma, multiple facial fractures, severe damage to his left eye, multiple head and facial lacerations, and other bodily injuries, as well as emotional trauma associated with the brutal attack.

106.    Plaintiff therefore seeks any and all damages allowable, attorney's fees pursuant to 42 U.S.C. § 1988, costs of this action, and discretionary costs.

# COUNT TWO

## FAILURE TO PROTECT PLAINTIFF AND OTHER INMATES

## VIOLATION OF CIVIL RIGHTS LAWS UNDER COLOR OF LAW
### 42 U.S.C. § § 1983 and 1988

### (Against Officer Revill)

107.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

108.    Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws. Here, Officer Revill was acting under color of state law.

109.    As a result of the special relationship that existed between Plaintiff and Officer Revill, Officer Revill also owed Plaintiff a duty of care to protect him from harm. He breached that duty by failing to protect him.

110.    At the time of this incident, the law was clearly established that deliberate indifference to the safety of inmates from harm is unconstitutional.

111.    The substantial risk of inmate attacks at the Jail and Jail Annex is longstanding, pervasive, well-documented, and has been expressly acknowledged by County officials. The circumstances suggest that Officer Revill – having been employed as a correction officer at the Jail since 2017, having acknowledged (by his signature) receipt of CCSO policies and TCI's minimum standards, and having been exposed to reliable information concerning the risks (*e.g.*, frequent media investigations and news

-36-

reports) – must have known about the risks to inmates like Plaintiff. Those risks were so obvious that they had to have been known. Accordingly, Officer Revill cannot hide behind an excuse that he was unaware of the risk.

112.    Upon information and belief, Officer Revill had knowledge of Odell's extensive record of violence and Plaintiff's non-violent criminal history, yet Officer Revill inexplicably assigned Plaintiff and Odell to the same cell (Cell 1 of the Jail Annex). Knowing that the Jail Annex lacked sufficient Corrections Officers to rapidly respond to inmate distress alerts in the Jail Annex where dozens of inmates were housed and that no regular or routine security checks were made at the Jail Annex, Officer Revill still failed to take measures to prevent or mitigate the substantial risk of assault on the Plaintiff.

113.    By failing to segregate Plaintiff from violent inmates, like Odell, housed in the Jail, Officer Revill acted with deliberate indifference to Plaintiff's constitutional rights. That violation resulted in serious injuries to Plaintiff, including severe trauma to Plaintiff's head, face, and body, multiple facial fractures, severe damage to his left eye, multiple facial lacerations, requiring surgical repair, and emotional injuries associated with the brutal attack.

114.    Regardless of what prompted the assault by inmate Odell and other inmates on the Plaintiff, it likely would not have happened if Officer Revill had not placed Plaintiff and Odell in the same cell.

115.    Plaintiff faced a substantial risk of serious harm, and Officer Revill acted with deliberate indifference to that risk, causing Plaintiff's serious injuries.

-37-

116.    As a direct and proximate result of the acts or omissions of Officer Revill, Plaintiff suffered serious injuries, including head trauma, multiple facial fractures, severe damage to his left eye, multiple head and facial lacerations, and other bodily injuries, as well as emotional trauma associated with the brutal attack.

117.    Plaintiff therefore seeks any and all damages allowable, attorney's fees pursuant to 42 U.S.C. § 1988, costs of this action, and discretionary costs.

## COUNT THREE

### FAILURE TO PROTECT PLAINTIFF AND OTHER INMATES

### VIOLATION OF CIVIL RIGHTS LAWS UNDER COLOR OF LAW
### 42 U.S.C. § § 1983 and 1988

### (Against Officers Revill, Caldwell, and Huff)

118.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

119.    Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws. Here, Officers Revill, Caldwell, and Huff were acting under color of state law.

120.    As a result of the special relationship that existed between Plaintiff and Corrections Officers, Officers Revill, Caldwell, and Huff also owed Plaintiff a duty of care to protect him from harm. They breached that duty by failing to protect him.

-38-

121. At the time of this incident, the law was clearly established that deliberate indifference to the safety of inmates from harm is unconstitutional.

122. The substantial risk of inmate attacks at the Jail and Jail Annex is longstanding, pervasive, well-documented, and expressly acknowledged by County officials in the past. The circumstances suggest that Officers Revill, Caldwell, and Huff – employed as corrections officers at the Jail and Jail Annex, having acknowledged (by their signatures) receipt of CCSO policies and TCI's minimum standards, and having been exposed to reliable information concerning the risks (*e.g.*, frequent media investigations and news reports) – must have known about these risks. The risks were also so obvious that they had to have been known. Accordingly, Officers Revill, Caldwell, and Huff cannot hide behind an excuse that they were unaware of the risk.

123. When Plaintiff was being savagely beaten, Officers Revill, Caldwell, and Huff who appear to have been the only Corrections Officers on-duty at the time, were across the street and across the railroad tracks in another facility, having largely abandoned the dozens of inmates housed in the Jail Annex, including Plaintiff, to their own fates. By the time the three Officers were able to get to the Jail Annex after being summoned by an inmate alert, Plaintiff had been viciously beaten about the head, face, and body and suffered severe head and facial trauma, severe damage to his left eye, multiple facial fractures, and multiple lacerations.

124. Officers Revill, Caldwell, and Huff either purposefully caused the harm to Plaintiff or acted with "deliberate indifference" to such harm, knowing of and inexplicably disregarding the substantial risk to Plaintiff's health or safety if the Jail

-39-

Annex was left largely unattended and if the dozens of violent and non-violent inmates housed there were left unsupervised.

125.     As a direct and proximate result of the acts or omissions of Officers Revill, Caldwell, and Huff Plaintiff suffered serious injuries, including head trauma, multiple facial fractures, severe damage to his left eye, multiple head and facial lacerations, and other bodily injuries, as well as emotional trauma associated with the brutal attack.

126.     Plaintiff therefore seeks any and all damages allowable, attorney's fees pursuant to 42 U.S.C. § 1988, costs of this action, and discretionary costs.

## COUNT FOUR

### MUNICIPAL LIABILITY
### POLICY, CUSTOM, AND PRACTICE OF FAILING TO PROTECT
### INMATES BASED UPON UNSAFE CONDITIONS OF CONFINEMENT

### VIOLATION OF CIVIL RIGHTS LAWS UNDER COLOR OF LAW
### 42 U.S.C. § § 1983 and 1988

### (Against Cocke County)

127.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

128.     From the moment of Plaintiff's incarceration, the County owed him a duty of care to protect him from harm. A special relationship existed between the County and Plaintiff which gave rise to that duty.

129.     The County breached its duty to Plaintiff by subjecting him to conditions of confinement so deplorable and unsafe that they created a substantial risk of harm to him. As a result, Plaintiff was seriously injured.

-40-

130.    At the time Plaintiff was savagely beaten by inmates in the Jail Annex, the law was clearly established that deliberate indifference to the safety of inmates from harm is a constitutional violation.

131.    A governmental entity may be held liable based upon its officers' deliberate indifference to and violation of any citizen's constitutional rights where a custom, policy, or procedure of the municipality is found to be the proximate cause of the constitutional violation.

132.    Dating back to the year 2011, only one Tennessee county (Van Buren) has consistently had a larger overcapacity percentage of inmates in its jail than Cocke County. For no fewer than eight consecutive years, the Jail has exceeded its 120-person maximum capacity for housing inmates. At times, the Jail has been over *300% beyond capacity*. When Plaintiff was incarcerated there, the Jail was *262.5% beyond capacity*, with 215 inmates.

133.    The County's Mayor, Board of Commissioners, Sheriff, and Jail Administrator have long-known that Jail conditions are inhumane. They also have long-known that these and other conditions have given way to a mounting number of inmate-on-inmate assaults, becoming an almost daily occurrence. Yet, the County has done little or nothing to alleviate these unsafe conditions, which have created an unconstitutionally high level of violence at the Jail and Jail Annex.

134.    Repeated failed inspections and decertification of the Jail by the TCI have made little or no difference, as the County Commission is simply not interested in insuring the safety of inmates arrested and put in the County's care. The Sheriff has

stated that these conditions have made the Jail "a breeding ground for fights between inmates," comparing some cells to "street gangs." Equally deplorable is the County's small staff of inexperienced and unqualified officers, which "result[s] in decreased safety and security."

135.    These systemic deficiencies amount to a pattern of deliberate indifference to the safety of inmates. The conditions are hardly disputed by the Mayor and Sheriff, with the Mayor not disputing that the Jail *"is unsafe for inmates and staff."*

136.    The results of these deficiencies are startling, ranging from policy violations by now-terminated Corrections Officers, to officer-corruption and criminal indictments, to increasing inmate-violence, and to constitutional violations causing inmate-injuries and even deaths.

137.    The failure to remedy overcrowding, under-staffing, and other unsafe conditions is so pervasive as to constitute an actual policy, practice, or custom on the part of the County not to protect non-violent inmates from wanton violence of other inmates. After all, County officials have admitted that overcrowding and under-staffing are the root-cause of inmate-on-inmate violence at the Jail and Jail Annex.

138.    What is more, the Jail's rudimentary inmate-classification/segregation system is not functioning. There are no areas in the Jail or Jail Annex assigned to violent or non-violent inmates or particular categories of offenses. A wide variety of inmates are housed in particular areas, like Cell 1 in the Jail Annex, casting serious doubt as to the success of any efforts to separate violent from non-violent inmates. There is a widespread failure to separate inmates with violent propensities from non-

-42-

violent inmates. Inmates charged with or convicted of non-violent offenses with relatively low bonds, convicted of non-violent misdemeanors, pretrial detainees charged with extremely serious and violent crimes with high bonds and individuals convicted of one or more serious violent crimes are indiscriminately distributed throughout the Jail and Jail Annex.

139.    Under the current "system," Jail officials do not obtain or utilize much information pertinent to a determination of whether an inmate is violent or non-violent. Thus, there is no effective separation of violent and non-violent inmates.

140.    Inmates are exposed to constitutionally-impermissible violence and threat of personal harm in violation of their Eighth and Fourteenth Amendment rights. Jail records, inmate statements, and statements of County officials reveal that violence within the Jail is pervasive and a very serious problem. This increasing level of violence is attributable to a number of root causes, including:

> ■ severe overcrowding (crowding increases contact between people and thus provides opportunities and incentives to violent behavior);
>
> ■ lack of staff to observe inmate-behavior (number of corrections officers is inadequate for Jail, as officers leave the Jail Annex largely unattended and cannot check on and supervise inmates, staff turnover is exceedingly high, and staff is largely inexperienced); and
>
> ■ an inadequate classification system (a mixed bag of inmates are housed in each cell).

141.    Statistics provide an incomplete picture of Jail violence. Given the difficulty in patrolling the living areas, Corrections Officers do not observe many minor fights. Since many inmates are afraid to tell them of an incident or to identify an attacker, it is reasonable to believe that some violent incidents are unreported.

142.    Here, the County, Sheriff Fontes, and Administrator Hartsell made an intentional decision with respect to the conditions and policies under which Plaintiff was confined. Those conditions and policies subjected Plaintiff to a substantial risk of serious harm. For whatever reason, the County failed to take any reasonable measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the Defendants' conduct obvious. By not taking such measures, the County caused Plaintiff and other inmates to suffer serious injuries.

143.    These historical acts or omissions – regarding chronic overcrowding and under-staffing, regarding the hiring of unqualified Jail staff, regarding the failure or inability to classify inmates or segregate violent from non-violent inmates, and regarding the failure to post sufficient corrections-staff in the Jail Annex, where dozens of violent inmates are housed – are indicative of a custom, policy, or practice of deliberate indifference to inmate safety at the Jail.

144.    The County maintained a policy and practice of overcrowding and inadequate supervision at the Jail that allow for inmate-on-inmate violence. This policy was a moving force behind the constitutional violation alleged herein.

145.    But for these unconstitutional customs, policies, or practices, Sheriff Fontes, Administrator Hartsell, and the Correction Officer-Defendants would not have exhibited deliberate indifference to Plaintiff's safety and the safety of other inmates during his incarceration, but would have addressed the inmate overcrowding and under-staffing problems, would have hired qualified individuals supervise inmates (instead of pizza delivery drivers), would have properly classified Plaintiff (instead of putting him in a cell with violent offenders), and would have posted sufficient corrections-staff inside the Jail Annex to supervise inmates, or implemented a policy of regular and routine security checks (instead of staff being located in another facility).

146.    In this case, the policy, practices, customs, and procedures of the County, as described herein, were substantial factors in the violation of Plaintiff's rights and the serious injuries suffered by him.

147.    For all of these reasons, the County has abdicated its governmental responsibilities to provide a safe and secure incarceration environment to inmates.

148.    As a direct and proximate result of the foregoing acts or omissions of the County, Plaintiff and other inmates suffered serious injuries. Plaintiff suffered head trauma, multiple facial fractures, severe damage to his left eye, multiple head and facial lacerations, and other bodily injuries, as well as emotional trauma associated with the brutal attack.

149.    Plaintiff therefore seeks any and all damages allowable, attorney's fees pursuant to 42 U.S.C. § 1988, costs of this action, and discretionary costs.

-45-

# COUNT FIVE

## FAILURE TO TRAIN AND SUPERVISE

## VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW
### 42 U.S.C. §§ 1983 and 1988

**(Against Cocke County, Sheriff Fontes, and Administrator Hartsell)**

150.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

151.    The County, Sheriff Fontes and Administrator Hartsell had a duty to train and supervise Corrections Officers.

152.    Each official failed to adequately train their Corrections Officers. They failed to properly train and supervise Officer Revill and others to classify inmates and segregate violent inmates from non-violent inmates. They also failed to properly train and supervise Officers Revill, Caldwell, and Huff to maintain their posts in the Jail Annex in order to supervise the dozens of inmates housed there. They further failed to properly train and supervise Officers Revill, Caldwell, and Huff to perform regular and routine security checks of the dozens of inmates housed in the Jail Annex.

153.    Sheriff Fontes and Administrative Hartsell are supervisory officials for the Jail and Jail Annex and were authorized and responsible for development and implementation of Jail policies and procedures to supervise and protect inmates. By their acts and omissions, Sheriff Fontes and Administrative Hartsell established the unconstitutional customs, policies and practices, as described above.

-46-

154. The County's policies and practices were deliberately indifferent to the constitutional rights of its inmates under the Eighth and Fourteenth Amendments of the United States Constitution.

155. As supervisory law enforcement officials, Sheriff Fontes and Administrator Hartsell were well aware that the (a) failure to have an adequate classification and/or segregation system and the (b) failure to post sufficient Corrections Officers in the Jail Annex and/or have Corrections Officers perform regular and routine security checks in inmates would result in increased instances of inmate-on-inmate assault, like the assault on Plaintiff on January 10, 2020. Yet, on information and belief, Sheriff Fontes and Administrator Hartsell created a substantial risk of harm to Plaintiff and other inmates by implementing or ratifying policies, practices, and/or customs that deprived Plaintiff of his right to be free from physical assault while confined in the Jail or Jail Annex.

156. Here, the need for training is so obvious that failure to do so is deliberate indifference to constitutional rights. What happened to Plaintiff in the Jail is also a situation likely to recur. It is, after all, predictable that an officer lacking specific tools to handle that situation will violate citizens' rights. An inmate-on-inmate assault was a predictable result of Sheriff Fontes and Administrator Hartsell's failure to train correctional staff in classification techniques, to man their posts, and to perform regular and routine security checks.

157. The County, Sheriff Fontes, and Administrator Hartsell failed to create and implement sufficient policies and procedures for the protection of inmates, and to

-47-

ensure adequate training. They further failed to provide proper staffing, supervision and discipline of employees in order to prevent deliberate indifference to the safety of inmates as occurred here. The resulting policy, practice, of custom was one of indifference to the safety and protection of inmates from violent inmates.

### *Defacto Policy, Practice, or Custom*

158. The County, Sheriff Fontes, and Administrator Hartsell had a duty of care to Plaintiff and other inmates to ensure that officers were properly trained in the appropriate procedure to protect inmates. The duty further extends to ensure that supervisory officers are properly trained not to overlook or condone unnecessary and unreasonable deprivations of safety. These duties were all breached, as described herein.

159. The County, through its policies and procedures, has failed to adequately train and supervise its employees, officers and agents to provide inmates adequate safety.

160. By ratifying the acts or omissions of Officers Revill, Caldwell, and Huff, Sheriff Fontes and Administrator Hartsell acquiesced in their unconstitutional conduct through the execution of their own job functions.

161. Upon information and belief, the County has failed to develop a lawful policy of protecting inmates and failed to train its officers and agents in the proper manner in which to protect inmates. No such policy exists, and if it does, it is so

-48-

ineffectual as to be no policy at all. The County's failure to develop lawful policies for the appropriate provision of safety and to properly train officers to follow such guidelines constitute deliberate indifference to the Constitutional rights of citizens.

162. The actions of Officers Revill, Caldwell, and Huff, combined with the repeatedly failed TCI inspections, evidence a complete lack of training as to the proper method to protect inmates from violence. The failure of Sheriff Fontes and Administrator Hartsell to recognize or appreciate the gravity of such actions implies that they, too, found no wrong in the conduct, giving officers the "green light" to continue to violate the civil rights of inmates in this manner.

163. Official policy usually exists in the form of written statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. Prior to the assault on the Plaintiff, the County had developed and maintained a defacto policy, custom, or practice exhibiting deliberate indifference to the deprivation of safety to inmates, which caused violations of Plaintiff's civil rights.

164. Here, the Corrections Officers rightly believed their actions would not be properly monitored or corrected by supervisory officers and that their misconduct would be tolerated and accepted. The County established, by custom and usage, a de facto policy of allowing the unnecessary/unreasonable deprivations to go unchecked.

165.     Such acts or omissions constitute a violation of §1983 and were done to deprive Plaintiff of his rights under the Eighth and Fourteenth Amendments. They were also done with actual malice and willful and wanton indifference toward Plaintiff and with deliberate disregard for his Constitutional and statutory rights.

166.     For all of these reasons, Cocke County abdicated its governmental responsibilities to provide a safe and secure incarceration environment to inmates.

167.     As a direct and proximate result of the foregoing acts or omissions of the County, Sheriff Fontes, and Administrator Hartsell, Plaintiff and other inmates suffered serious injuries. Plaintiff suffered head trauma, multiple facial fractures, severe damage to his left eye, multiple head and facial lacerations, and other bodily injuries, as well as emotional trauma associated with the brutal attack.

168.     Plaintiff therefore seeks any and all damages allowable, attorney's fees pursuant to 42 U.S.C. § 1988, costs of this action, and discretionary costs. Plaintiff is entitled to punitive damages, pursuant to 42 U.S.C. §1988.

## COUNT SIX

## NEGLIGENCE

**(Against County, Sheriff Fontes, Hartsell,
and Officers Revill, Caldwell, and Huff)**

169.     The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

170.     Defendants owed a duty to Plaintiff to use due care in fulfilling their duties and to ensure their conduct conformed to applicable laws, policies, procedures,

-50-

and generally accepted law enforcement standards. Defendants had a duty to Plaintiff to act with ordinary care and prudence so as not to cause him harm or injury.

171.    The County has a statutory and constitutional duty to maintain the Jail to secure the safe custody, health, and comfort of inmates housed therein. Tenn. Code Ann. §§ 5-7-104 and 106. Sheriff Fontes and Administrator Hartsell were also obligated by law – and had the requisite authority –  to protect persons confined to the Jail.

172.    The County is legally liable for the non-negligent acts or failures to act of County deputies under Tenn. Code Ann. § 8-8-302, including instances of gross negligence. It is also liable for the negligence of persons it employs, including Sheriff Fontes, Administrator Hartsell, Corrections Officers Revill, Caldwell, and Huff, and any other employee at the Jail under Tenn. Code Ann. § 29-20-205.

173.    Sheriff Fontes is responsible for the acts and omissions of corrections officers, including their performance or failure to perform the tasks and duties that he is statutorily obligated to perform. *See* Tenn. Code Ann. § 41-4-101.

174.    As described above, Defendants breached their duties of due care and were negligent, grossly negligent, reckless, willful, and wanton in all of the foregoing particulars.

### The County, Sheriff Fontes, and Administrator Hartsell

175.    The County, Sheriff Fontes, and Administrator Hartsell were on notice that chronic overcrowding at the Jail and Jail Annex prevented inmates from being

properly classified and housed according to their potential dangerousness. Yet, they made no changes to Jail policies to require that dangerous inmates be segregated from non-violent inmates.

176. Nor did they have a policy that would prevent violent inmates from being housed with non- or less-violent inmates.

177. As a result of the failure to reduce overcrowded and unsafe conditions, Plaintiff and other inmates were put in jeopardy by being housed with violent inmates who, on information and belief, are known to be violent inmates.

### *Officer Revill*

178. For his part, Officer Revill was responsible for classifying Plaintiff while he was in the custody of the Jail between December 9, 2019 and January 10, 2020. He failed to correctly classify or segregate Plaintiff as a "minimum" custody level inmate, ignoring Plaintiff's actual criminal history, inmate Odell's criminal history, and misapplying or disregarding purported factors for classification purposes.

179. On information and belief, Officer Revill knew that placing Plaintiff – who was in custody on violation of probation and failure to appear charges – in a cell with violent felons would pose a substantial risk that Plaintiff would be assaulted by such inmates. Despite this, he assigned Plaintiff to a grossly overcrowded holding cell filled with a collection of violent offenders, some with a long history of assaults.

-52-

180.    Officers Revill, Caldwell, and Huff were grossly derelict in their official duties by leaving dozens of inmates in the Jail Annex largely unsupervised and unattended immediately prior to the assault on the Plaintiff.

181.    These Officers were nowhere to be found on the grounds of the Jail Annex when Plaintiff – savagely beaten by inmates in his cell of the Jail Annex and bleeding from severe head and facial trauma and multiple fractures that ultimately required surgical  repair – made it to his feet and summoned them for help. They were across the street, in another building, on the other side of the railroad tracks.[40]

182.    By acting and failing to act, the County, Sheriff Fontes, Administrator Hartsell, and Officers Revill, Caldwell, and Huff breached their duties to protect Plaintiff, and/or acted in reckless disregard of the foreseeable risk that he would be assaulted. Their negligence caused serious injuries to Plaintiff, including trauma to Plaintiff's face and body, multiple facial fractures, serious eye damage, and facial lacerations, requiring surgical repair.

183.    As a direct and proximate result of the Defendants' conduct, as alleged above, and other undiscovered negligent conduct, Plaintiff and other inmates were caused to suffer bodily injuries and severe pain and suffering. Defendants acts or omissions  proximately  caused  the  injuries  to  Plaintiff,  entitling  him  to  recover

---

[40]The railroad tracks in Newport lie between the Old Jail (where the officers were at the time) and the Jail Annex (where Plaintiff was at the time). It was fortunate that when Plaintiff sounded the alarm to Corrections Officers, a train did not obstruct the Officers from going to the Jail Annex to help him.

compensatory damages for such damages. Said damages include, but are not limited to, bodily injuries and the tremendous pain and suffering Plaintiff endured.

## COUNT SEVEN

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Individual Defendants)

184.    The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

185.    The actions alleged above against the Individual Defendants were outrageous and utterly intolerable in a civilized society, and were done with a reckless disregard of the probability of causing emotional distress.

186.    The Individual Defendants' conduct was perpetrated with the intent to inflict, or with reckless disregard of the probability of inflicting, mental anguish on Plaintiff.

187.    The Individual Defendants knew, or should have known, that their conduct would result in serious injuries and severe emotional distress to Plaintiff, and their conduct was perpetrated with the intent to inflict, or with reckless disregard of the probability of inflicting, mental anguish, and severe emotional distress upon Plaintiff. Plaintiff has suffered nightmares, severe headaches, stress and anxiety, unwanted memories of the trauma, avoidance of situations that bring back memories of the trauma, heightened reactions, depression, irritability, hyper-vigilance, exaggerated-startle response, loss of sleep, fear of sleep, difficulty concentrating, and lives his life in fear of being assaulted.

-54-

188.    The wrongful acts of the Defendants were willful, oppressive, intentional and malicious; therefore, punitive damages should be assessed against them in an amount deemed sufficient to punish and deter them and others in similar positions of authority from engaging in similar conduct in the future.

189.    The aforementioned acts were done knowingly, intentionally, and maliciously, for the purpose of oppression and inflicting injury upon Plaintiff, and in reckless, wanton and callous disregard of his safety, security, and civil rights.

## VIII.   JURY DEMAND

190.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

## IX.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A.      That Defendants be served with a copy of this Complaint and be required to answer;

B.      This action may proceed as a class action, with Plaintiff as the designated Class representative and Plaintiff's counsel as Class Counsel;

C.      That the Court find that Defendants have engaged in the unconstitutional conduct and statutory and common law violations alleged herein;

D.      That Plaintiff and the Class, which numbers in the hundreds or thousands, recover compensatory damages sustained by them in the sum of $15,000,000, as provided by federal and Tennessee law, and that a judgment in their favor be entered against the Defendants in an appropriate amount as shown at trial;

-55-

E.  That alternatively, Plaintiff and Class be awarded such damages as will fully compensate them for all injuries proximately caused by Defendants' actions and that a judgment in their favor be entered;

F.  That Plaintiff and the Class be awarded punitive damages in the sum of $15,000,000, or an appropriate amount sufficient to deter the Defendants from engaging in similar conduct in the future;

G.  That Plaintiff and the Class have and recover costs for this suit, including reasonable attorneys' fees and discretionary costs, as provided by law; and

H.  That Plaintiff and the Class be awarded post-judgment interest as permitted by common law or applicable statute and such other or further relief as may be just and proper.

Respectfully submitted, this 11th day of January, 2021.


*/s/ Lance K. Baker*
Lance K. Baker, Tenn. Bar #: 032945
**THE BAKER LAW FIRM**
550 Main Street, Suite 600
Knoxville, TN 37902
Tel: (865) 200-4117
Fax: (865) 437-3370
lance@lbakerlawfirm.com

Thomas C. Jessee, Tenn. Bar#: 00113
**JESSEE & JESSEE**
P.O. Box 997
Johnson City, TN 37605
423-928-7175

*Counsel for Plaintiff*

-56-